```
          IN THE UNITED STATES DISTRICT COURT
       FOR THE WESTERN DISTRICT OF NORTH CAROLINA
                   STATESVILLE DIVISION
                      5:08CV10-02-V
                     (5:02CR37-11-V)
```

| | |
|---|---|
| ERIC ANTHONY WIMBUSH,  )  | |
|     Petitioner,     ) | |
|                                  ) | |
|        v.                 ) | **O R D E R** |
|                                  ) | |
| UNITED STATES OF AMERICA,  ) | |
|     Respondent.     ) | |
| _____) | |

**THIS MATTER** is before the Court on Petitioner's "Motion Under 28 U.S.C. § 2255 To Vacate, Set Aside, Or Correct Sentence . . . ," filed January 30, 2008. For the reasons stated herein, Petitioner's Motion will be <u>denied</u> and <u>dismissed</u>.

### I.  FACTUAL AND PROCEDURAL BACKGROUND

The record of Petitioner's underlying criminal case reflects that on September 10, 2002, an indictment was filed charging him (and 10 others) with having conspired to possess with intent to distribute five kilograms or more of cocaine powder and 50 grams or more of cocaine base, all in violation of 21 U.S.C. §§ 841 and 846.

On April 22, 2003, Petitioner appeared before the Court and entered a "straight-up" guilty plea to the conspiracy charge. However, on June 9, 2003, Petitioner filed a <u>pro-se</u> Motion to withdraw his guilty plea, which the Government formally opposed; and he filed a Motion for the appointment of replacement counsel.

Then, on June 16, 2003, original counsel filed a Motion to Withdraw from Petitioner's case.

On June 18, 2003, the Court held a hearing after which it orally granted Petitioner's request for new counsel. Subsequently, on January 7, 2004, the Court entered an Order granting Petitioner's Motion to Withdraw his guilty plea and scheduled his case for trial.

On August 24, 2004, the Government filed a Motion <u>in Limine</u> to preclude defense counsel from mentioning the 2003 acquittal of one of Petitioner's co-conspirators. The Government argued that the Fourth Circuit previously had held that information such as that which it was seeking to exclude constituted hearsay, and that its probative value was outweighed by its potential harm.

On September 13, 2004, after several continuances, a jury was empaneled and Petitioner's trial got underway. At the outset of that trial, the Court granted the Government's Motion <u>in Limine</u>.

Thereafter, the Government presented evidence which tended to show that Petitioner was a mid-level dealer in a conspiracy through which he received and distributed significant amounts of cocaine base ("crack"). Petitioner and other mid-level dealers, in turn, supplied lower-level dealers with crack; and Petitioner often purchased and sold crack to those same mid-level dealers when their primary sources were sold out of their supplies. In

fact, one such mid-level dealer was Damien Liles, Petitioner's brother-in-law, who testified that between the years of 1998 and 2000, he bought about 30 ounces of crack from Petitioner in one and two-ounce increments; and that during the same period, Petitioner had purchased about 20 ounces of crack from him.

The defense presented testimony from Petitioner's wife and one of his former supervisors. The witnesses essentially testified that Petitioner was a nice, well-mannered family man with well-mannered children; that Petitioner had good character; that he was an excellent worker; and that Damien Liles had fabricated his testimony and statements against Petitioner. However, the former supervisor conceded that even if he had been aware that Petitioner was found in possession of a stolen firearm and had sold drugs from the home which he shared with his disabled grandmother, his opinion of Petitioner's good character would not have changed. Additionally, Mrs. Wimbush admitted that Petitioner often had difficulty maintaining steady employment because he abused marijuana; and that Petitioner frequented a house known for drug deals at least three times per week, a basketball court where drugs were sold about twice per week, and other known drug sale locations on a regular basis.

The Court denied the defense's Motions for acquittal made at the end of the Government's case-in-chief and at the end of its case in rebuttal. Thereafter, the jury deliberated and convict-

ed Petitioner of having conspired to possess with intent to distribute "50 grams or more of cocaine base."

On March 21, 2005, the Court conducted Petitioner's Sentencing Hearing. At that time, the Court determined that, by virtue of his having been accountable for involvement with 700 grams of cocaine base, subject to a two-level firearm related enhancement under U.S. Sentencing Guidelines § 2D1.1(b)(1) and subject to a two-level enhancement for his leadership role under 3B1.1(c), Petitioner's Total Offense Level was 40. The Court also found that Petitioner's Criminal History Category was III, thereby yielding a sentencing range of 360 months to life imprisonment. Ultimately, Petitioner received a 360-month term.

Petitioner timely gave his notice of appeal. On appeal, appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), arguing that this Court had erred in denying Petitioner's Rule 29 Motion, in granting the Government's Motion in Limine, thereby excluding evidence of the acquittal of a co-conspirator, and in calculating his 360-month sentence. United States v. Wimbush, No. 05-4337, slip op. at 2-5 (4th Cir. Oct. 27, 2006).

In addition, Petitioner filed his own pro-se brief, arguing that the Government had failed to establish that the conspiracy had dealt in crack, as opposed to powder cocaine; that defense counsel had been ineffective because he had labored under a

4

conflict of interest which arose from counsel's having been under consideration for a judicial appointment during the period that he represented Petitioner; and that the gun and marijuana were seized and admitted into evidence in violation of his Fourth Amendment rights.  Id. at 4 n.1 and at 5 n. 2.

However, the Circuit Court determined that Petitioner's claim against trial counsel was not conclusively demonstrated on the face of the record.  Id. at 5 n.2.  Therefore, the Court stated that such claim should be raised, if at all, in a proceeding like this one, under § 2255.  Id.

Furthermore, the Circuit Court rejected Petitioner's other claims, determining that the evidence presented at trial, which included "overwhelming evidence . . ." that Petitioner had trafficked in crack and not powder cocaine, was sufficient to sustain his conviction; that even without the gun and marijuana evidence, which evidence was not obtained or admitted in violation of Petitioner's rights, there was "more than enough evidence . . . to convict [him]"; that the Government's Motion in Limine properly was granted because evidence concerning the acquittal of a non-testifying co-conspirator typically is not admissible at trial; and that Petitioner's sentence properly was calculated and supported by the evidence.  Id. at 4-6.  Consequently, that Court affirmed Petitioner's conviction and sentence.  Id. at 7.

Now, Petitioner has returned to this Court on the instant

5

Motion to Vacate. Here, Petitioner argues that the Court committed "[j]urisdictional error in sentencing" when it sentenced him "beyond the jury['s] verdict in [the] absence of the evidence." Second, Petitioner argues that the jury returned a general verdict; therefore, the Court was required to calculate his sentence on the basis of powder cocaine, the "lesser of the two drugs," not the crack. Third, Petitioner claims that the gun and marijuana evidence was obtained and admitted at trial in violation of his Fourth Amendment rights. Last, Petitioner claims that appellate counsel was ineffective for having refused to raise a claim that trial counsel was ineffective due to the alleged conflict of interest.

## II. ANALYSIS

### 1. This Court is authorized to promptly review and dismiss any § 2255 motion which does not contain a claim that entitles the petitioner to relief.

Pursuant to Rule 4(b) of the Rules Governing Section 2255 Proceedings, sentencing courts are directed to promptly examine motions to vacate, along with "any attached exhibits and the record of prior proceedings . . . " in order to determine whether the petitioner is entitled to any relief on the claims set forth therein. In the event it is determined that the petitioner is not entitled to relief, the reviewing Court must dismiss the motion.

Following such directive, this Court carefully has reviewed

6

Petitioner's Motion to Vacate and the pertinent record evidence. As hereafter explained, such review clearly establishes that Petitioner is not entitled to relief on any of his claims.

   2. **Petitioner's first, second and third claims are procedurally barred**.

By his first and second claims, Petitioner essentially alleges that his sentence is erroneous because it is unauthorized and unsupported by the jury's verdict, and by his third claim he alleges that evidence was obtained and used against him in violation of his Fourth Amendment rights. However, these claims already were put to rest by the Fourth Circuit Court of Appeals.

Indeed, as was previously noted, the Fourth Circuit specifically concluded that Petitioner's conviction and his sentence were amply supported by the evidence which was presented during his trial; and that the seizure and admission of the marijuana and gun evidence did not violate Petitioner's Fourth Amendment rights. Wimbush, No. 05-4337, slip op. at 4 and 5 n. 2.

It is well settled that in the absence of a favorable, intervening change in the law which can be applied on collateral review, a petitioner simply is not free to re-litigate claims which already were rejected on direct review. Davis v. United States, 417 U.S. 333, 342 (1974); Boeckenhaupt v. United States, 537 F.2d 1182 (4th Cir.), cert. denied, 429 U.S. 863 (1976). Accordingly, since Petitioner has not directed the Court's attention to any intervening change in the law which would authorize

7

him to reassert these claims, those matters are procedurally barred.

### 3. **In the alternative, claims one through three have been procedurally defaulted**.

To the extent that Petitioner can show that these three claims were not raised and rejected on appeal, such showing still would not entitle him to any relief. That is, in <u>United States v. Mikalajunas</u>, 186 F.3d 490, 492-93 (4th Cir. 1999), <u>cert. denied</u>, 529 U.S. 1010 (2000), the Circuit Court pointed out that "[i]n order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, the movant must show cause and actual prejudice resulting from the errors of which he complains[,] or he must demonstrate that a miscarriage of justice would result from the refusal of the court to entertain the collateral attack"; <u>citing</u> <u>United States v. Frady</u>, 456 U.S. 152 (1982); <u>see also</u> <u>Bousley v. United States</u>, 523 U.S. 614, 621 (1998) (failure to challenge matter on direct appeal, absent certain compelling circumstances, bars collateral review of same); <u>and</u> <u>Stone v. Powell</u>, 428 U.S. 465, 477 n.10 (1976).

In the instant case, although Petitioner argues that appellate counsel was ineffective for having failed to argue that trial counsel labored under a conflict of interest, he does <u>not</u> also claim that appellate counsel was ineffective for having failed to raise his other three claims. Thus, Petitioner has not

8

attempted to assert a cause for the procedural default of these claims.  Nor does Petitioner otherwise hint at any compelling circumstances which could require the Court to overlook such default.  Consequently, to the extent that claims one through three were not already resolved on appeal, they still must be summarily dismissed as procedurally defaulted without excuse.

### 4. **Petitioner has failed to establish that appellate counsel was ineffective**.

By his only remaining claim, Petitioner alleges that appellate counsel was ineffective for having failed to argue that trial counsel labored under a conflict of interest.

With respect to claims of ineffective assistance of counsel, Petitioner must show that counsel's performance was constitutionally deficient to the extent it fell below an objective standard of reasonableness, and that he was prejudiced thereby.  Strickland v. Washington, 466 U.S. 668, 687-91 (1984).  In making this determination, there is a strong presumption that counsel's conduct was within the wide range of reasonable professional assistance.  Id. at 689; see also Fields v. Attorney Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir.), cert. denied, 474 U.S. 865 (1985); Hutchins v. Garrison, 724 F.2d 1425, 1430-31 (4th Cir. 1983), cert. denied, 464 U.S. 1065 (1984); and Marzullo v. Maryland, 561 F.2d 540 (4th Cir. 1977), cert. denied, 435 U.S. 1011 (1978).

Under these circumstances, Petitioner "bears the burden of

proving Strickland prejudice." Fields, 956 F.2d at 1297, citing Hutchins, 724 F.2d at 1430-31. If Petitioner fails to meet this burden, a "reviewing court need not consider the performance prong." Fields, 956 F.2d at 1290, citing Strickland, 466 U.S. at 697.

Moreover, in considering the prejudice prong of the analysis, the Court must not grant relief solely because Petitioner can show that, but for counsel's performance, the outcome of the proceeding would have been different. Sexton v. French, 163 F.3d 874, 882 (4th Cir. 1998), cert. denied, 528 U.S. 855 (1999). Rather, the Court "can only grant relief under . . . Strickland if the 'result of the proceeding was fundamentally unfair or unreliable.'" Id., quoting Lockhart v. Fretwell, 506 U.S. 364, 369 (1993).

The crux of this claim is that trial counsel labored under a conflict of interest on the basis of counsel's pending judicial appointment. In fact, Petitioner claims that trial counsel "was on his way to becoming a district court judge in the very court where he represented [Petitioner and] was faced with the decision of effectively representing his client or focusing on his soon to be transition as a district court judge."

To prevail on a claim that there was a conflict of interest between himself and his former attorney, Petitioner must show (1) that his attorney had an actual conflict of interest; and (2)

that the conflict of interest adversely affected former counsel's performance. Fullwood v, Lee, 290 F.3d 663, 689 (4th Cir. 2002), citing Cuyler v. Sullivan, 446 U.S. 335, 348 (1980). "To establish an actual conflict of interest, the petitioner must show that his interests diverged with respect to a material, factual or legal issue or to a course of action." Mickens v. Taylor, 227 F.3d 203, 213 (4th Cir. 2000).

Here, the record first shows that Petitioner simply is mistaken about the nature of defense counsel's appointment. Contrary to Petitioner's assertion that counsel was about to be appointed "to the very court where [counsel] represented [him] . . . ," counsel actually was being considered for a position on the North Carolina State court, not a federal court appointment.

More critically, Petitioner has not set forth any matter over which he and counsel's interests actually diverged -- he does not assert that he and counsel disagreed about a course of action; nor does he assert that he and counsel disagreed concerning a factual or legal issue. In fact, Petitioner does not even assert that he told appellate counsel that he and trial counsel had any such disagreements. Instead, Petitioner seeks to rely upon his speculation and conclusory assertions that "[t]he psychological affects [sic] and pressures that came out of the soon to be transition enabled [sic] trial counsel's ability to put aside his own affairs and perform as counsel was suppose to."

11

It goes without saying, however, that Petitioner's assertions fall far short of setting forth any facts to establish that trial counsel labored under a conflict which appellate counsel was obliged to challenge on appeal.

Likewise, the Court rejects Petitioner's speculation that "[s]urely something must have been said or done contrary to perfection during the course of a three (whole day trial)," and [s]urely there must have been something in the record that was questionable to [appellate counsel] . . . ." In fact, the Sixth Amendment does not mandate that a defendant receive a perfect trial, but merely one which is free from constitutional error. See United States v. Hasting, 461 U.S. 499, 508-09 (1983) ("taking into account the reality of the human fallibility of the participants, there can be no such thing as an error-free, perfect trial, and . . . the Constitution does not guarantee such a trial."); and Delaware v. Van Arsdall, 475 U.S. 673, 681 (1986) (noting that a criminal defendant is entitled to "a fair trial, not a perfect one."). Therefore, even if Petitioner had alleged facts to show that trial counsel performed imperfectly, that evidence, without more, simply would not have given appellate counsel a basis for raising a claim of ineffective assistance.

Finally, it has not escaped the Court's attention that the Fourth Circuit routinely refuses to address claims of ineffective assistance of counsel on direct review, finding instead that such

issues are better resolved in <u>habeas</u> proceedings.  Indeed, as was already noted, the Petitioner actually <u>did</u> raise this claim on appeal.  Not surprisingly, however, the Circuit Court declined to address the claim because there was no conclusive evidence to support it.  <u>Wimbush</u>, No. 05-4337, slip op. at 5 n. 2.  In any case, Petitioner has failed to demonstrate that either of his attorneys was ineffective, or that he was prejudiced by their performances.  Accordingly, this claim must be denied.

### III. <u>CONCLUSION</u>

Petitioner's first three claims must be denied and dismissed--either on the basis of their foreclosure by the appellate Court or his procedural default of them.  Petitioner's final claim must be denied and dismissed because he has failed to state a claim for relief as to it.

### IV. <u>ORDER</u>

**NOW, THEREFORE, IT IS HEREBY ORDERED** that Petitioner's Motion to Vacate is **DENIED and DISMISSED.**

**SO ORDERED.**

Signed: April 17, 2008

*[signature: Richard L. Voorhees]*

Richard L. Voorhees
United States District Judge